Toomey, J.
The plaintiff, Nelmor Co., Inc. (“Nelmor”), brought this action against the defendant, Plastic Injectors, Inc. (“Plastic”), to recover money allegedly owed Nelmor under an agreement. The defendant now moves to dismiss, pursuant to Mass.R.Civ.P. 12(b)(2) and (5), asserting that (I) the court lacks personal jurisdiction over it, and (II) there was insufficient service of process. For the reasons discussed below, the motion is denied.
BACKGROUND
Nelmor, a Massachusetts corporation specializing in the manufacture of machinery used in the plastics industry, has its principal place of business in North Uxbridge, Massachusetts. Plastic, a plastics molding and injecting manufacturer, has its principal place of business in Spartanburg, South Carolina. Since 1979 the two companies have had a continuing business relationship centering on Nelmor’s manufacture and sale of certain requested machinery to Plastic. For instance, from 1979 to 1983 Nelmor sold Plastic ten press granulators. Since the delivery of these machines, Nelmor has provided Plastic with numerous replacement parts, machine accessories, maintenance advice and service. All of Nelmor’s manufacturing has taken place in Massachusetts.
In 1992 Plastic initiated contact with Nelmor Vice President Edward J. Ronca to discuss the engineering, design, and manufacture of several custom-built machines known as Model 2030s to perform certain tasks for Plastic. The parties exchanged numerous phone calls as they finalized the design. Plastic finally ordered the machines and Nelmor built and shipped them less than two months later.
In April 1993, Plastic and Nelmor discussed building a larger machine, known as a Model 2036, which could better provide for the needs of Plastic. Over thirty phone calls, numerous telefaxes and correspondence were exchanged before Plastic finally ordered three custom made Model 2036 machines. These machines were built by Nelmor in Uxbridge and sent to Plastic four months later. Plastic allegedly owes Nelmor $60,000 under the terms of their agreement.
DISCUSSION
I. THE JURISDICTION ISSUE
When the defendant seeks dismissal on the grounds that the court lacks personal jurisdiction, the plaintiff “has the burden of establishing the facts upon which the question of personal jurisdiction over the defendant is to be determined.” Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 3 (1979); Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978); Nicholas Assoc. v. Starr, 4 Mass.App.Ct. 91, 93 (1976).
The resolution of a challenge to a Massachusetts court’s personal jurisdiction over a nonresident defendant requires a two-step analysis. It must be first determined whether the court is able to exercise jurisdiction pursuant to the state’s longarm statute, G.L.c. 223A, §§3(a)-(g). The court must next consider whether such exercise of jurisdiction is permitted by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979).
A. The Longarm Statute
G.L.c. 223A, §3 provides that “[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person’s (a) transacting any business in this commonwealth . . .” The term “transacting business” has been broadly construed and “applies to any purposeful acts by an individual, whether personal, private, or commercial.” Haddad v. Taylor, 32 Mass.App.Ct. 332, 335 (1992), quoting Ross v. Ross, 371 Mass. 439, 441 (1976). The Supreme Judicial Court has found the requisite “transacting business” where a foreign corporation sent periodic appraisal reports to Massachusetts, frequently initiated telephone communications to Massachusetts, mailed monthly invoices to Massachusetts and regularly accepted payment by check from the Massachusetts bank account of the Massachusetts plaintiff. Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 6 (1979). Moreover, the Good Hope court noted that the cause of action in the case before it arose, at least in part, from the defendant’s business transactions in Massachusetts, a factor contributing to the court’s conclusion that the requirements of §3 had been satisfied. Id. at 6-7.
In the case at bar, Plastic has had an ongoing business relationship with Nelmor since 1979. It has ordered numerous machines and replacement parts through phone calls and telefaxes. It has accepted the delivery of these Massachusetts-produced products. The subject matter of this action arises from Plastic’s transacting business in Massachusetts (viz, ordering and taking delivery of the 2036 machines). While Plastic makes much of the fact that none of its agents even entered Massachusetts, the Massachusetts Appeals Court has noted that the “(w)idespread use of the telephone and the mail has commonly replaced physical presence in negotiations." Haddad, supra at 335. What is significant “is that the defendant’s contacts with the forum [be] deliberate and not fortuitous, such that ‘the possible need to invoke the benefits and protections of the forum’s laws [is] reasonably foreseeable, if not foreseen, rather than a surprise.’ ” Good Hope Industries, Inc., supra at 11, quoting Product Promotions, Inc. v. Cousteau, 495 F.2d 483, 496 (5th Cir. 1974). Applying the broad reading customarily employed in the construction of c. 223A, §3(a), this court finds jurisdiction under the Massachusetts longarm statute.
B. The Due Process Analysis
Next, the court must determine whether the exercise of personal jurisdiction in this case comports with *519 the requirements of due process. In order to satisfy the constitutional demand, plaintiff is obligated to show that defendant has purposefully established “minimum contacts” in the forum state such that defendant could “reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985), quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980). Unilateral acts by a plaintiff claiming some relationship with the nonresident defendant does not satisfy the contact requirement. Id., quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958). “[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.” Id. at 475, quoting Hanson, supra at 253. “The mere fact that an entity in Massachusetts executes a contract with an entity in another state does not automatically constitute sufficient contact so as to confer a finding of personal jurisdiction.” A-Connoisseur Transp. Corp. v. Celebrity Coach, 742 F.Supp. 39, 43 (D.Mass. 1990), citing Ganis Corp. of California v. Jackson, 822 F.2d 194, 197 (1st. Cir. 1987). Rather, the court is required to “look at all of the communications and transactions between the parties, before, during and after the consummation of the contract, to determine the degree and type of contacts the defendant had with the forum, apart from the contract alone.” Id., quoting Ganis Corp. of California, supra at 197-98.
This court concludes that Plastic has purposefully established minimum contacts with Massachusetts such that it could reasonably anticipate being “haled into court” here. Plastic and Nelmor have been transacting business for over fifteen years. Nelmor has manufactured numerous custom machines and replacement parts for Plastic and shipped them to South Carolina. The parties exchanged numerous telephone calls and telefaxes in regard to the design and manufacture of the 2036 machines now at issue. Overall, the lengthy negotiations and extensive business relationship of the parties bring this case out of a simple “contract-only” type situation into the “contract-plus” relationship required by Burger King Corp. See also, Marine Charter & Storage v. Denison Marine, Inc., 701 F.Supp. 930, 935 (D.Mass. 1988) (long term contacts and extensive working relationship satisfies “contract-plus” analysis). Contrast A-Connoisseur Transp. Corp. v. Celebrity Coach, 742 F.Supp. 39 (D.Mass. 1990) (lack of purposeful activity directed toward forum state); L&P Converters v. H.M.S. Direct Mail Service, 634 F.Supp. 365 (D.Mass. 1986) (defendant was merely a passive purchaser of paper products produced in Massachusetts).
In sum, this court’s exercise of jurisdiction in the circumstances presented at bar does not offend traditional notions of “fair play and substantial justice.” Burger King Corp., supra at 476, quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945). There is no insult to due process in Plastic’s being compelled to defend in Massachusetts courts.
II. THE SERVICE OF PROCESS ISSUE
While the service of process heretofore obtained by Nelmor may be of suspect lawfulness,[1] Plastic has not been prejudiced thereby and dismissal is thus an inappropriate remedy. In an abundance of caution, however, this court will direct that service be effected again and suggests that G.L.c. 181, §15 might contain an effective course for Nelmor to follow.
ORDER
It is therefore ORDERED that defendant’s motion to dismiss is DENIED; provided, however, that plaintiff shall perfect service, in accordance with G.L.c. 181, §15, or otherwise, within thirty (30) days of receipt of this order.

 This court does view the instant service as having satisfied the demands of G.L.c. 223, §§37 and 38, G.L.c. 223, §§4, 6 and 8, and Mass.R.Civ.P. 4(e), but concedes that that conclusion is not rooted in granite and that the service is at least arguably defective.