PETER DROUKAS, JR. *vs.* DIVERS TRAINING ACADEMY, INC.

Plymouth. December 5, 1977. — May 4, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Jurisdiction*, Nonresident, Under long-arm statute. *Sale*, Manner of delivery.

The contacts with Massachusetts of the defendant in an action brought here, which consisted merely of the placement of an advertisement in a publication distributed in the Commonwealth, the receipt in Florida of a telephone call from the plaintiff in Massachusetts in regard to the purchase of two marine engines, the sending of correspondence to the plaintiff confirming the sale, and the shipment of the engines "collect" to the plaintiff in Massachusetts, were insufficient to confer on the Massachusetts court personal jurisdiction over the defendant under G. L. c. 223A, § 3 (*a*). [153-157]

Where the defendant in an action under G. L. c. 93A agreed to ship two marine engines from Florida to the plaintiff, but there was no evidence that the defendant specifically contracted to deliver or supply the engines in Massachusetts, the contract between the parties was merely a shipment contract and the defendant did not contract to "supply . . . things in this commonwealth" so as to confer on the Massachusetts court personal jurisdiction over the defendant under c. 223A, § 3 (*b*). [157-160]

CIVIL ACTION commenced in the Superior Court on March 19, 1976.

The case was heard by *Collins*, J., on a motion to dismiss.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*John F. Finnerty, Jr.*, for the plaintiff.

*Thomas F. Quinn* for the defendant.

QUIRICO, J.  The plaintiff appeals from a judgment entered following the allowance of the defendant's motion, under Mass. R. Civ. P. 12 (b) (2), 365 Mass. 754 (1974), to dismiss the action for lack of personal jurisdiction. The plaintiff challenges the order of a judge of the Superior Court allowing the motion, arguing that G. L. c. 223A, §§ 3 (*a*) and (*b*) (the long arm statute), conferred personal jurisdiction over the defendant.[1] We disagree with this contention and affirm the judgment.

The procedural background of the case is as follows. On March 19, 1976, the plaintiff, a resident of Massachusetts, commenced an action under G. L. c. 93A, inserted by St. 1967, c. 813, § 1, against the defendant, a Florida corporation. The complaint sought recovery for an alleged breach of warranty by the defendant in the sale of two marine engines which the plaintiff contends were defective by reason of salt water damage. The plaintiff sought treble damages, attorney's fees, and any other relief deemed appropriate by the court. Service of process was made on the defendant in Florida by certified mail, return receipt requested, in accordance with G. L. c. 223A, § 6 (*a*) (3).

The defendant filed a motion to dismiss the action for lack of "personal jurisdiction" over it within the meaning of the statute. The motion was supported by an affidavit of the defendant's president alleging facts bearing on the issue of jurisdiction. The plaintiff submitted an affidavit controverting in certain respects the defendant's affidavit and

---

[1] Section 1 of the long arm statute, inserted by St. 1968, c. 760, defines "person" to include "a corporation," and therefore the words "personal jurisdiction" as used in § 3 of the statute apply to the defendant corporation.

alleging facts in support of jurisdiction. After a hearing the judge allowed the motion and judgment was entered dismissing the action. The plaintiff appealed therefrom to the Appeals Court, and we ordered direct appellate review.

Confronted with a motion under Mass. R. Civ. P. 12 (b) (2), 365 Mass. 754 (1974), a plaintiff "has the burden of establishing the facts upon which the question of personal jurisdiction over a defendant is to be determined." *Nichols Assocs.* v. *Starr*, 4 Mass. App. Ct. 91, 93 (1976), and authorities cited. See J.W. Smith & H.B. Zobel, Rules Practice § 12.9 (1974). The facts alleged by the plaintiff in his affidavit in support of his claim of jurisdiction are essentially as follows. In September of 1971, the plaintiff saw the defendant's advertisement for the sale of two marine engines in a nautical publication entitled "Boats and Harbors," which was distributed in Massachusetts. The plaintiff, in Massachusetts, telephoned the defendant's place of business in Florida, spoke with its president, and ordered the engines. Thereafter, the plaintiff forwarded a check for the purchase price to the defendant. The defendant's president sent a letter to the plaintiff in Massachusetts confirming the sale. Several other letters sent by the defendant relative to the sale were received by the plaintiff in Massachusetts. Subsequently, the defendant shipped the engines from Florida to Massachusetts. On receipt of the engines the plaintiff discovered that, contrary to the defendant's prior representation of their perfect condition, the engines had sustained salt water damage before shipment.[2]

The judge, in ruling on the motion to dismiss, filed a memorandum in which, for the purposes of the motion, he accepted the assertions contained in the plaintiff's affidavit as true. The judge recited the facts as detailed above, adding only that the bill of lading for the shipment of the

---

[2] The plaintiff's affidavit controverts the defendant's assertions that before the engines were shipped they were inspected by the plaintiff's agent, accepted in their existing condition, and purchased in "as is" condition.

engines to the plaintiff stated that the shipping "charges are to be collect." The judge ruled that the plaintiff did not "show sufficient contacts by Defendant with Massachusetts to enable its courts to exercise personal jurisdiction over the Defendant to the limits allowed by the Constitution of the United States," citing G. L. c. 223A, § 3 (a) and (b).

General Laws c. 223A, § 3, as amended by St. 1969, c. 623,[3] provides in part that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth; [or] (b) contracting to supply services or things in this commonwealth."[4] In *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.*, 361 Mass. 441, 443 (1972), we viewed the function of the long arm statute as "an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." See *Ross* v. *Ross*, 371 Mass. 439, 441 (1976); *Nichols Assocs.* v. *Starr, supra* at 92. In construing such limits, the United States Supreme Court has held that personal jurisdiction over a nonresident defendant requires "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945) (quoting in part from *Milliken* v. *Meyer*, 311 U.S. 457, 463 [1940]). See *Saporita* v. *Litner*, 371 Mass. 607, 618 (1976); *Ross* v. *Ross, supra; "Automatic" Sprinkler, supra* at 444; *Shaffer* v. *Heitner*, 433 U.S. 186, 207-212 (1977); *Hanson* v. *Denckla*, 357 U.S. 235, 250-251 (1958); *McGee* v. *International Life Ins. Co.*, 355 U.S. 220, 222 (1957). Amplifying on this, the Court has stated that in order for a nonresident defendant to be subject to jurisdiction, there

[3] Section 3 was subsequently amended by St. 1976, c. 435.

[4] These two subsections give rise to jurisdiction in the alternative. If a particular cause of action under consideration is sufficient to meet the requirements of either one of the subsections, jurisdiction as to that cause of action is present.

must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson* v. *Denckla, supra* at 253. See *Ross* v. *Ross, supra; "Automatic" Sprinkler, supra.* With these constitutional limitations in mind, we address below each of the defendant's jurisdictional claims under G. L. c. 223A.

1. *Transacting Any Business.*

General Laws c. 223A, § 3 (*a*), gives rise to jurisdiction if the defendant either directly or through an agent transacted any business in Massachusetts, and if the alleged breach of warranty arose from such transaction of business. From the scant and almost inadequate record before us, it appears that the defendant's only contacts with Massachusetts were the placement of an advertisement in a publication distributed in the Commonwealth, the receipt in Florida of a telephone call from the plaintiff in Massachusetts in regard to the purchase of two engines, the sending of correspondence to the plaintiff confirming the sale, and the shipment of the engines "collect" to the plaintiff in Massachusetts. It is undisputed that the defendant's principal place of business is in Florida. It maintains no office in Massachusetts, nor does it own any property within the Commonwealth. It appears that neither the defendant, its corporate president, nor any of its agents has previously done business within the Commonwealth or had any contact here other than that detailed above. On these facts, and in light of the constitutional limitations previously discussed, we think the defendant's contacts with Massachusetts were insufficient to constitute the transaction of business in the Commonwealth so as to come within the reach of § 3 (*a*).

In *"Automatic" Sprinkler, supra,* we held that there were insufficient contacts to assert jurisdiction under G. L. c. 223A, § 3 (*a*), where the defendant's only contacts with the Commonwealth consisted of the affirmance of a contract and the making of partial payments pursuant to the contract through the mails. In that case, the defendant's agent signed a purchase order in New York and mailed it to

the plaintiff's division in Massachusetts. In response, the defendant in New York received the plaintiff's invoice mailed from Massachusetts, as well as another letter acknowledging and accepting the defendant's purchase order. Subsequently, the defendant sent a partial payment of the purchase price to the plaintiff's division in Massachusetts. In holding that these contacts were insufficient to afford jurisdiction under § 3 (*a*), we characterized the defendant's activity as having little impact on commerce in Massachusetts, and concluded that the defendant did not "purposefully [avail] itself of the privilege of conducting activities within the forum State." *"Automatic" Sprinkler, supra*, quoting from *Hanson* v. *Denckla, supra*. Likewise here, where the defendant's contacts with the Commonwealth are not significantly greater than those of the defendant in *"Automatic" Sprinkler*, we view the sale of the engines to the defendant as an isolated transaction, with slight effect on the commerce of the Commonwealth[5] and as void of any purposeful intent on the part of the defendant to avail itself of the privilege of conducting activities within the forum State.

Cases in other jurisdictions, based on long arm statutes comparable to our own, have reached similar results. In the case of *Morgan* v. *Heckle*, 171 F. Supp. 482 (E.D. Ill. 1959), the judge held that where the defendant's only contacts with Illinois were (a) the receipt in Tennessee of a telephone call from the plaintiff's agent in Illinois placing an order for goods and (b) the shipment of the ordered goods by a motor freight carrier to Illinois C.O.D., there

---

[5] In this regard, we agree with the following observations of the court in *Caso* v. *Lafayette Radio Elecs. Corp.*, 370 F. 2d 707, 712 (1st Cir. 1966): "We are satisfied that, generally speaking, the Massachusetts courts would assert jurisdiction over a foreign corporation . . . whenever the corporation's activities affect the commerce of Massachusetts substantially so that the state has an interest in regulating the general conduct of those activities . . . ." Although these observations predate the enactment of G. L. c. 223A, § 3, the effect of a nonresident's activity on the commerce of the Commonwealth is still an important factor to be considered in deciding the sufficiency of contacts with Massachusetts.

were insufficient contacts to warrant the assertion of personal jurisdiction over the defendant in Illinois under the "transaction of any business" clause of that State's statute. In *Grobark* v. *Addo Mach. Co.*, 16 Ill. 2d 426 (1959), the Supreme Court of Illinois held that a nonresident's activities which consisted of accepting orders outside the State and shipping the goods so ordered into the State by independent carriers did not confer jurisdiction over it under the transacting business clause. More recently, in *Geneva Indus., Inc.* v. *Copeland Constr. Co.*, 312 F. Supp. 186 (N.D. Ill. 1970), the judge held that a single sale of goods by an Illinois plaintiff to a Pennsylvania defendant, negotiated entirely by telephone and by mail, fell short of possessing constitutionally sufficient minimum contacts with Illinois. And, in *Quartet Mfg. Co.* v. *Allied Traders, Ltd.*, 343 F. Supp. 1302 (N.D. Ill. 1972), the judge held that a single purchase of goods by an Illinois plaintiff from a Hong Kong defendant, solicited by the plaintiff, was insufficient to permit the exercise of jurisdiction over the defendant.

We note, however, that in other recent cases, the Illinois courts have expanded somewhat the jurisdictional reach of the transaction of business clause. In *Willis* v. *West Ky. Feeder Pig Co.*, 132 Ill. App. 2d 266 (1971), the court held that a course of sales to an Illinois plaintiff, all evidently initiated by the plaintiff on the nonresident defendant's initial solicitation, and concluded by C.O.D. delivery to the plaintiff in Illinois, constituted sufficient transaction of business to sustain jurisdiction over the defendant. In *Tabor & Co.* v. *McNall*, 30 Ill. App. 3d 593 (1975), cited by the plaintiff, the same court as in *Willis, supra,* held that it had jurisdiction where several contracts for the purchase and delivery of grain were negotiated in telephone calls between the defendant out-of-State seller and the plaintiff Illinois buyer, where confirmation of the contracts was sent from Illinois, and where delivery of the grain was to be in Illinois. The court found these acts to be sufficient to constitute the transaction of business within Illinois so as to give personal jurisdiction over the defendant. However, in both these latter

cases, the contacts with the forum State — including the size and number of the transactions — were significantly greater than those in the present case. Consequently, their authority does not detract from the conclusion we reach today.

In *Agrashell, Inc.* v. *Bernard Sirotta Co.*, 344 F.2d 583 (2d Cir. 1965), cited by this court along with *Morgan* v. *Heckle, supra*, in *"Automatic" Sprinkler, supra* at 445, the defendant New York corporation impleaded Hammons Products Company, a Missouri corporation, as a third-party defendant, alleging that it had warranted the fitness of goods for resale and had agreed to indemnify Bernard Sirotta Co. against a patent infringement suit. The Missouri corporation had solicited orders from Sirotta by mail and telephone to New York, the contracts between the two companies had been executed by Sirotta in New York, and the parties had agreed that the New York law would govern the interpretation of their principal contract. Yet, in applying the transacting business clause of the New York long arm statute, the court held that the contacts within the State were not sufficient to confer jurisdiction. See in addition *A. Millner Co.* v. *Noudar, Lda.*, 24 App. Div. 2d 326, 330 (N.Y. 1966), where the court stated that the mere mailing of a commercial contract into New York as well as the shipment of goods into the State by a nonresident defendant did not constitute the transaction of business, although in that case other activities of the defendant's officers in New York in furtherance of the contract were sufficient to establish jurisdiction. See also *Jump* v. *Duplex Vending Corp.*, 41 Misc. 2d 950, 950-952 (N.Y. 1964).

We have reviewed the few cases, in addition to *Tabor & Co.* v. *McNall, supra*, cited by the plaintiff and find them to be inapposite to the facts at bar.[6] The question what ac-

_____

[6] It is incumbent on us to comment on the briefs submitted by the parties in this case. Even though the parties have filed supplementary briefs at our request, we are still without relevant authority or developed legal argument to aid us in our decision. Aware of the justifiable expectations

tivities constitute the transaction of business in this or any other case must be decided on the particular facts involved. Examining the nature of the defendant's activities in this case and the alleged legal injury claimed to have arisen from them,[7] we conclude that jurisdiction does not lie under the transaction of business clause of G. L. c. 223A, § 3.

2. *Contracting to Supply Services or Things in the Commonwealth.*

General Laws c. 223A, § 3 (*b*), gives rise to jurisdiction over the defendant as to the plaintiff's cause of action if the alleged breach of warranty is found to have arisen from the defendant's "contracting to supply services or things in this commonwealth." We construe the phrase "in this commonwealth" as referring to the place where the services or things are to be supplied, rather than referring to the place of the contracting. See *Sarno* v. *Florida E. Coast Ry.*, 327 F. Supp. 506, 507 (D. Mass. 1971); Brown, A Long Arm Statute for Massachusetts (Jurisdiction over Non-Domiciliaries), 12 Boston B.J. 9, 14 (1968). However, on the particular facts of this case, we do not think that the defendant contracted "to supply" the two marine engines to the plaintiff in the Commonwealth. Rather, pursuant to our analysis below, we interpret the agreement between the parties as having provided for the shipment of the engines to the plaintiff by means of an independent carrier, with the burden of supplying or delivering the engines in the Commonwealth on the carrier.

There was no allegation in the affidavit of either party as to any agreement whether the plaintiff buyer or the defendant seller was to bear the responsibility of delivering the engines in Massachusetts. Ordinarily, under contracts for the sale of goods contemplating transportation by a carrier, "[t]he seller is not obligated to deliver at a named destina-

---

and interests of clients in the zealous presentation of their claims, we are deeply concerned with increasing instances of inadequate appellate advocacy.

[7] See *Kropp Forge Co.* v. *Jawitz*, 37 Ill. App. 2d 475 (1962).

tion . . . unless he has specifically agreed so to deliver or the commercial understanding of the terms used by the parties contemplates such delivery." 1A Uniform Laws Annot., U.C.C., Comment 5 to § 2-503 (Master ed. 1976). Such an agreement is called a destination contract, with the seller's duty being to deliver conforming goods to the buyer at the named destination. G. L. c. 106, §§ 2-503, and 2-401 (2) (b). On the other hand, the manner of delivery may be designated under what is called a shipment contract. Under such a contract, the seller is required or authorized to send or ship the goods to the buyer, but is not required to deliver them at a particular destination. G. L. c. 106, § 2-504. Both of these types of contracts usually employ mercantile terms or "trade symbols" specifying the requirements for delivery, such as "F.O.B. the place of shipment," G. L. c. 106, § 2-319 (1) (a), or "F.O.B. the place of destination," G. L. c. 106, § 2-319 (1) (b). Where no such term is employed and there has been no specific agreement otherwise, the contract for the transportation of goods by carrier will be presumed to be a shipping contract. See 1A Uniform Laws Annot., U.C.C., Comment 5 to § 2-503 (Master ed. 1976); J. White & R. Summers, Uniform Commercial Code § 5-2, at 142-143 (1972); C.B. Everberg, Uniform Commercial Code Forms Annotated § 2-504, Form 1, Author's Comment (1966).

Although the defendant here agreed to ship the engines to the plaintiff, there is no evidence that the defendant specifically contracted to deliver or supply the engines in the Commonwealth. The bill of lading did not contain a mercantile term, such as F.O.B. or any other, explicitly prescribing the manner in which delivery was to be tendered. The only term appearing on the bill of lading indicated that the carrying charges were to be paid by the plaintiff "collect." That tends to support the conclusion that the contract between the parties was a shipment contract, in which the seller's only obligation was to make arrangements for shipment with the carrier and put the engines in the possession of the carrier. G. L. c. 106, § 2-504. This the defendant did.

Accordingly, the defendant cannot be said to have contracted to "supply . . . things in this commonwealth" so as to come within this forum's jurisdiction under G. L. c. 223A, § 3 (*b*). His responsibility as to the physical delivery of the engines ended on their delivery to the carrier in Florida.[8] The carrier was not acting as the defendant's agent in transporting the engines to Massachusetts since title to the engines had already passed to the plaintiff on the defendant's delivery of them to the carrier in Florida.[9]

Moreover, in deciding whether jurisdiction lies under § 3 (*b*) of our long arm statute, the activity of the nonresident in contracting to supply things in the Commonwealth must be of sufficient dimension to withstand the constitutional limitations discussed in part 1 of this opinion. Even if we were to find here that the defendant had contracted to supply the two marine engines in Massachusetts, we would not consider that transaction, isolated in nature and void of any other significant contacts with the Commonwealth, to be an act by which the defendant "purposefully [availed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson* v. *Denckla,* 357 U.S. 235, 253 (1958). *Ross* v.

---

[8] Shipping terms have been considered by some courts as irrelevant on the issue whether sufficient minimum contacts exist to allow the exercise of jurisdiction under the "doing business" or "transacting any business" clauses of various long arm statutes. See *Jeno's Inc.* v. *Tupman Thurlow Co.*, 349 F. Supp. 1185, 1187 n.4 (D. Minn. 1972); *Benn* v. *Linden Crane Co.*, 326 F. Supp. 995, 997 (E.D. Penn. 1971). But see Zabin, The Long Arm Statute: International Shoe Comes to Massachusetts, 54 Mass. L.Q. 101, 124 (1969). However, in the instant case, where the plaintiff's second claim arises under § 3 (*b*) of our long arm statute specifically relating to the "contracting to supply services or things in this commonwealth," the terms of shipment, which prescribe the manner of supply or delivery, are of utmost relevance.

[9] See *Sarno* v. *Florida E. Coast Ry.*, 327 F. Supp. 506, 507 (D. Mass. 1971), where it was held that, when the defendant carrier received a shipment of tomatoes in Florida for delivery in Boston, it contracted to supply services or things in the Commonwealth. This result was based in part on statute 49 U.S.C. § 20 (11) (1970), making the original receiving railroad liable for the acts of any other railroad used in completing a delivery, as though the latter were its agent.

*Ross*, 371 Mass. 439, 441 (1976). *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.*, 361 Mass. 441, 444 (1972).

For the reasons discussed above, we conclude that the action was properly dismissed.

*Judgment affirmed.*