LLEWELYN E. HOOD *vs.* AMERICAN M.A.N. CORPORATION. June 21, 1985. *Jurisdiction*, Nonresident, Long-arm statute.

A judge of the Superior Court held, we think correctly, that this action failed for lack of personal jurisdiction over the defendant.

Llewelyn E. Hood, a commercial fisherman residing in Hull, Massachusetts, sued American M.A.N. Corporation, a New York corporation, seeking a declaration that the parties entered into an enforceable agreement by which the defendant gave the plaintiff an extension of the period of warranty of a diesel engine installed on a vessel owned by the plaintiff; and that the defendant wrongfully repudiated the agreement and became liable for its breach and for further damages pursuant to G. L. c. 93A (consumers' protection law). The defendant moved to dismiss the action on the jurisdictional ground, Mass.R.Civ.P. 12(b)(2), 365 Mass. 755 (1974). Affidavits were received and these, together with the complaint and annexed exhibits, enable us to piece out the relevant facts.

The defendant was a wholly owned subsidiary of Maschinenfabrik Augsburg-Nuernberg, a West German manufacturing firm located in Nuernberg. It assisted in marketing in this country diesel engines and certain

---

other items produced by the parent company. It sold one such engine to Diesel Engine Fabricating Company (DEFCO), a dealer in Houston, Texas, which sold it to Y & G Yachts, Inc., of Marathon, Florida, which installed it in a vessel that the latter company was building in Florida under contract with the plaintiff as purchaser.

Controversies arose between the plaintiff and Y & G Yachts, resulting in an arbitration proceeding in Florida that ended with an award on June 30, 1983. Final delivery of the vessel to the plaintiff was expected to take place in late July or early August. The defendant's warranty, however, was due to expire, as it ran for a year from August 26, 1982. There was conversation between the plaintiff and defendant in April, 1983, about a year's extension of the warranty. On April 22, 1983, the defendant wrote from New York to the plaintiff in Hull, pointing to the lapse of time, and stating that, if and when the plaintiff should desire the year's extension after actual acceptance of the vessel from Y & G Yachts, it would be necessary to have the engine checked at the plaintiff's expense by a mechanic designated by the defendant. In addition, if it then appeared needful to service the engine or replace parts, the plaintiff would have to pay those charges, too, before the extended warranty could be validated. Subsequently, on July 29, 1983, the plaintiff accepted the vessel, and around that time a mechanic — it was disputed whether he was authorized by the defendant, or merely requested by the plaintiff or Y & G Yachts — did perform a check of the engine as installed in the vessel in Florida.

During the transit of the vessel to Hull, the engine manifolds cracked (August 8, 1983). When the plaintiff asked the defendant to respond under the extended warranty, the defendant wrote (September 8, 1983) that an extension had not been agreed: the plaintiff had not answered the letter of April 22, 1983; moreover, the mechanic's check was not only unauthorized, but had been less extensive than the one envisioned. The defendant went on to list what conditions would have to be met to secure an extended warranty, and at what price. The plaintiff took the position that an extended warranty arose from the April 22, 1983, letter taken in connection with conversations between the parties, the details of which are not described in the record. Nor does the record indicate with any clarity what would be the scope or terms of warranty so arising.

So much for the particular dispute. The facts regarding the defendant corporation appeared from an affidavit of one of its officers and the plaintiff did not contradict or enlarge upon them. The corporation had no agent, distributor, office, mailing address, or other "contacts" in the Commonwealth, except that it had previously sold one diesel engine to a boatyard in Somerset in August, 1983; it had also sold wire rope hoists to two customers in Massachusetts who either dealt direct with a branch of the parent company in West Germany or with the defendant.

To sum up: The plaintiff acquired a vessel, including the engine, by purchase from a third party concluded in Florida. Such ties as there were to Massachusetts consisted of the receipt of a letter sent by the defendant from New York to the plaintiff in Massachusetts, which, together with conversations between the parties, evidently by telephone, embodied (in terms largely undescribed) an agreement (we shall assume for present purposes that there was one) warranting the engine, which, we may further assume, would likely be physically located for some time in Massachusetts. The other connections of the defendant to Massachusetts, described above, were quite negligible.

The plaintiff had the burden of demonstrating that the case fit one or another of the provisions of our long-arm statute, G. L. c. 223A, § 3, as amended through St. 1976, c. 435, read with the breadth that the Constitution permits. See *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 5-6 (1979). Cf. *Nova Biomedical Corp.* v. *Moller*, 629 F.2d 190, 192-193 (1st Cir. 1980). We do not enter upon general theory,[1] as it is fairly clear by previous decision that in the circumstances the single agreement of warranty (whether conceived to have been "made" in the Commonwealth or elsewhere) did not satisfy the provision dealing with the transaction of business, subsection (*a*) of c. 223A, § 3, or that covering the contracting to supply services or things, subsection (*b*),[2] each with the constitutional overlay.

In *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. 149 (1978), the plaintiff, a Massachusetts resident, having read an advertisement by the defendant Florida corporation in a nautical magazine circulated here, ordered two marine engines from the defendant, which the defendant then shipped by rail to the plaintiff, freight charges "collect." Upon arrival and inspection of the engines, the plaintiff found them damaged, contrary to the defendant's representations. The defendant had no office in Massachusetts or other such link here. The court, upon full analysis, held (by Quirico, J.) that the action for breach of warranty, with claims under G. L. c. 93A, could not, on defendant's objection, be maintained jurisdictionally in the Commonwealth under G. L. c. 223A, § 3(*a*) or (*b*).[3] Of a possible subsection (*a*) relationship,

---

[1] See Professor von Mehren's recent attempt at a general prescriptive statement, Adjudicatory Jurisdiction: General Theories Compared and Evaluated, 63 B.U.L. Rev. 279 (1983).

[2] "§ 3. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
(*a*) transacting any business in this commonwealth;
(*b*) contracting to supply services or things in this commonwealth; . . ."

[3] The court in *Good Hope Indus., Inc.*, 378 Mass. at 8 n.13, speaking of the *Droukas* case and a similar prior case, *"Automatic" Sprinkler Corp. of America* v. *Seneca Foods Corp.*, 361 Mass. 441 (1972), said: "In both these cases, while the defendants might be viewed literally as having 'transact[ed] . . . business' in Massachusetts, their contacts with the Commonwealth were constitutionally insufficient to support jurisdiction under G. L. c. 223A, § 3(*a*)."

the court said, "[W]e view the sale of the engines to the defendant as an isolated transaction, with slight effect on the commerce of the Commonwealth and as void of any purposeful intent on the part of the defendant to avail itself of the privilege of conducting activities within the forum State." 375 Mass. at 154. And of the subsection (*b*) contention, "Even if we were to find that the defendant had contracted to supply the two marine engines in Massachusetts, we would not consider that transaction, isolated in nature and void of any other significant contacts with the Commonwealth, to be an act by which the defendant 'purposefully [availed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958)." 375 Mass. at 159.

The *Droukas* case may be thought somewhat stronger for jurisdiction than the present case because there was a solicitation in Massachusetts and the sale was by the defendant direct, and although the sale might be taken to have been concluded in Florida, the defendant had caused the engines to be shipped to Massachusetts (to be sure, at the plaintiff's cost, and, presumably, risk).[4] In *Droukas*, as in the instant case, there was an alleged breach of warranty.[5]

Subsequent decisions of our courts have not derogated from *Droukas*. See the discussion in *Splaine* v. *Modern Electroplating, Inc.*, 17 Mass. App. Ct. 612 (1984). The view we take appears consistent with the Supreme Court decisions in *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286 (1980) (6-3 decision), *Helicopteros Nacionales de Colombia, S.A.* v. *Hall*, 466 U.S. 408 (1984) (8-1 decision), and *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462 (1985) (6-1 decision).

*Judgment affirmed.*

*Michael Savage* for the plaintiff.
*William D. Gardiner* for the defendant.

---

[4] That place of "making" and f.o.b. designation should not have much bearing on the jurisdictional question in mail order cases, see *Vencedor Mfg. Co.* v. *Gougler Indus., Inc.*, 557 F.2d 886, 890 (1st Cir. 1977).

[5] That the warrantor, if it had fulfilled the alleged warranty, might have done so by acts of servicing in Massachusetts (whether the putative warranty agreement would permit or require this, we cannot tell), does not, we think, materially alter the case.

