Fecteau, J.
Plaintiff, TX Media, Inc. (“TXM”), brought this action seeking damages for breach of contract and breach of the implied covenant of good faith and fair dealing allegedly committed by defendant, Spice Entertainment Companies, Inc., fka Graff Pay-Per-View, Inc. (“Graff’). Graff now moves to dismiss the instant action for lack of personal jurisdiction or, in the alternative, for forum non conveniens. For the reasons set forth below, Graffs motion to dismiss is allowed.
BACKGROUND
Graff is a foreign corporation (incorporated under the laws of Delaware) with its primary place of business in New York, New York. Graff provides pay-per-view programming to cable television companies and satellite dish owners throughout the United States, including Massachusetts. Graffs signal is first transmitted on the ground via a fiber optic path from its “Playback Center” in New York to an “Earth Station” in New Jersey. The signal is then uplinked to a satellite in outer space, from which the signal is downlinked by cable television operators or satellite dish owners located in the satellite’s “geographic footprint” which includes the United States.
On November 10, 1995, TXM, a Delaware corporation with its primary place of business, at all relevant times, in Westborough, Massachusetts,[2] and Graff entered into an “Interconnection and Consultancy” agreement (“TXM/Graff Agreement”), wherein TXM agreed to provide interconnection services to Graff for the ground transmission of Graffs signal via a fiber optic path from Graffs “Playback Center,” located in New York City, to an “Earth Station,” owned by ICG Wireless Services, Inc. (“ICG”) and located in Carteret, New Jersey (“ground link”).
The TXM/Graff Agreement also acknowledged TXM’s brokerage services, which included brokering a service agreement between Graff and ICG (“ICG Agreement”). Pursuant to the ICG Agreement, ICG contracted to uplink Graffs signal to a satellite in outer space (“uplink”). Numerous cable television companies and satellite dish owners entered into separate agreements with Graff to downlink Graffs signal from the satellite (“downlink”).
The parties negotiated the TXM/Graff Agreement in New York in person or on the telephone, both at Graffs New York City office and at a New York City condominium owned by Scott Beers (“Beers”), the president and managing partner of TXM. No telephone negotiations occurred between New York and Massachusetts. Beers sent to Graff a letter, dated May 10, 1995, which set forth the essential terms of their agreement and listed TXM’s Massachusetts address as the return address. The TXM/Graff Agreement was later signed at Graffs offices in New York.[3]
In the TXM/Graff Agreement, TXM and Graff agreed to relieve each other of their obligations if a force majeure occurred, including a third party’s failure to perform. Graff and IBM (its North Tanytown, New York branch office) had an agreement (“IBM Agreement”), wherein IBM agreed to provide Graff with video file servers, key components to Graffs “Playback Center,” by a certain date. Both TXM and Graff agreed that the TXM/Graff Agreement was contingent on IBM furnishing such servers. When IBM failed to provide those servers within the specified time,[4] Graff, by letter dated December 28, 1995, terminated the TXM/Graff Agreement.[5]
DISCUSSION
I. Personal Jurisdiction
In order for this Court to assert personal jurisdiction over Graff, (1) the Massachusetts long-arm statute, G.L.c. 223A, §3, must be satisfied; and, (2) the due process requirements of the United States Constitution must be fulfilled. Good Hope Indus., Inc., v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). The plaintiff, TXM, has the burden of proving personal jurisdiction. Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978). The Court “accept[s] as true the uncontroverted facts that appear in the materials presented to the Superior Court.” Conn. Nat’l Bank v. Hoover Treated Wood Products, Inc., 37 Mass.App.Ct. 231, 233 (1994) (citations omitted).
a. Long-Arm Statute
TXM argues that the Court has personal jurisdiction over Graff as TXM's cause of action arises from Graffs “transacting . . . business” in Massachusetts.[6] G.L.c. 223A, §3(a)[7] In order to determine that Graff was “transacting . . . business” in Massachusetts, TXM must show that Graff engaged in “any purposeful acts ... in Massachusetts, whether personal, private, or commercial.” Johnson v. Witkowski, 30 Mass.App.Ct. 697, 713 (1991), rev. denied 411 Mass. 1104. Although isolated and minor transactions with a Massachusetts resident may be insufficient, “the purposeful and successful solicitation of business from [Massachusetts] residents” by a foreign defendant is sufficient. Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994).
*313 It is undisputed that Graff has never been a domiciliary or resident corporation of Massachusetts: has never owned a subsidiary in Massachusetts: has never controlled any corporations in Massachusetts: has never maintained an office in Massachusetts; has never paid taxes in Massachusetts; has never maintained any bank accounts in Massachusetts; has no authority to conduct business as a foreign corporation in Massachusetts; and has no agent for service of process in Massachusetts. Moreover, the TXM/Graff Agreement was signed in New York, was negotiated in New York and New Jersey, and was to be performed in New York and New Jersey, and outer space (if the TXM/Graff Agreement is considered inextricably intertwined with the ICG Agreement). IBM’s failure to provide the servers for Graffs New York “Playback Center” and Graffs subsequent breach of the subject contract and the implied covenant of good faith and fair dealing occurred in New York.
On the other hand, according to the record, Graff sent five pieces of correspondence, including the December 28, 1995 termination letter,[8] to TXM in Westborough, Massachusetts.[9] Graff also had much contact with Massachusetts cable operators and vendors amounting to revenues over $2 million since November 1995 and over $1.5 million since January 1997. Those contacts demonstrate that Graff purposely directed its business activities at Massachusetts and actively sought contracts with Massachusetts cable operators and vendors, as well as satellite dish owners, thus establishing that Graff was “transacting . . . business,” in Massachusetts.
However, TXM’s causes of action against Graff did not arise from those contracts. Massachusetts has adopted a “but for” test in interpreting the “arising from” language found in G.L.c. 223A, §3. Tatro v. Manor Care, Inc., 416 Mass. 763, 771 (1994). “(A) claim arises from a defendant’s transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State.” Id. It cannot be said that but for Graffs contracts with Massachusetts cable companies and vendors, IBM’s failure to deliver the necessary servers and the subsequent alleged breach of the contract and breach of the implied covenant of good faith and fair dealing by Graff would not have occurred. Graff had contracts with cable television operators and satellite dish owners all over the nation, not just in Massachusetts. Thus, even without the Massachusetts contracts, Graff would have required its signal to be transferred from New York to New Jersey and then up to the satellite, IBM would have failed to deliver the servers, and Graff would have breached the TXM/Graff Agreement and the implied covenant of good faith and fair dealing.[10] Therefore, TXM has failed to establish that its claims arise from Graffs “transacting . . . business” in Massachusetts and, thus, that Graff is subject to in personam jurisdiction in Massachusetts under c. 223A, §3(a). Since there is no personal jurisdiction over Graff under the long-arm statute, the Court need not address the second element of an assertion of personal jurisdiction, to wit, whether personal jurisdiction is constitutionally permissible under due process principles. See Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 6 (1979) (holding that “(a]lthough presented with jurisdictional facts sufficient to survive due process scrutiny, a judge would be required to decline to exercise jurisdiction if the plaintiff was unable to satisfy at least one of the statutory prerequisites” set forth in G.L.c. 223A, §3).
II. Forum Non Conveniens
Assuming, arguendo, that TXM established personal jurisdiction over Graff, the present case should still be dismissed based on forum non conveniens under G.L.c. 223A, §5.[11] Forum non conveniens works to “decline jurisdiction which is constitutionally permissible when another state is better situated to deal with the matter.” Green v. Manhattanville College, 40 Mass.App.Ct. 76, 78 (1996), rev. denied 422 Mass. 1107, quoting Carlson Corp. v. Univ. of Vt., 380 Mass. 102, 109 n. 10 (1980). A “plaintiffs choice of forum should rarely be disturbed,” New Amsterdam Cas. Co. v. Estes, 353 Mass. 90, 95 (1967), quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 50, 508-09 (1947), “unless the balance of both private and public concerns strongly favors the defendant’s motion." Green, 40 Mass.App.Ct. at 79. “The decision to refuse to hear a case on the ground of forum non conveniens is left to the discretion of the trial judge.” Kearsarge Metallurgical Corp. v. Peerless Ins. Co., 383 Mass. 162, 168 (1981).
Three private factors should be considered in determining whether to dismiss an action based on forum non conveniens: (1) ease of access to proof; (2) availability of compulsory process; and (3) cost of attendance of witnesses. Green, 40 Mass.App.Ct. at 80. Those factors strongly favor a trial in New York. All of the potential witnesses, including Beers (TXM’s signer and main negotiator of the subject contract) and the officers and employees of Graff, IBM, and ICG, are, or are likely to be, located in New York (and possibly New Jersey). [12] Additionally, the pertinent records which will likely be evidence at a trial of this matter are located in New York or New Jersey with the exception of plaintiffs records. Furthermore, the parties in the TXM/Graff Agreement specifically contracted for New York law to apply to any dispute over the contract. New York has a very strong interest in enforcing its own laws. See Green, 40 Mass.App.Ct. at 80. For those reasons, this case should be dismissed on the ground of forum non conveniens.
ORDER
It is hereby ORDERED that Graffs Motion to Dismiss is ALLOWED.

TXM notes, in its opposition to Graffs motion, that its primary place of business is now Marlborough, Massachusetts.

 Graff claims, and TXM does not dispute, that almost all business dealings, including the negotiations, between Graff and TXM regarding the TXM/Graff Agreement occurred out of a New York City condominium owned by Beers, the president and managing partner of TXM, or out of the New Jersey home of Howard N. Miller (“Miller”), one of the four shareholders of TXM.

IBM, the White Plains, New York office, settled Graffs breach of contract claim against it.

 Graff also terminated the ICG agreement and the IBM agreement.

 Although Graff argues that the Court does not have general jurisdiction, this Court need not address that issue as it is TXM’s burden to establish personal jurisdiction, Droukas v. Divers Training Academy, Inc. 375 Mass. 149, 151 (1989), and it has failed to raise the issue of general jurisdiction. Additionally, TXM specifically states that general jurisdiction is not at issue here in its opposition papers. See Plaintiffs Memorandum in Opposition to Defendant’s Motion to Dismiss, p. 14 n. 12. Even assuming that Graffs contacts with Massachusetts were sufficient enough to constitute “continuous and systematic” activity, see Helcopteros Nacionales de Columbia, S.A. v. Hall 466 U.S. 408, 413-16 (1984), United Elec. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992) (stating that “[gleneral jurisdiction exists when the litigation is not directly founded on the defendant’s forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum State”), and Tatro v. Manor Care, Inc,, 416 Mass. 763, 772 n.6 (1994), this Court has dismissed the instant action based on forum non conveniens. See discussion, infra.

 G.L.c. 223A, §3(a) provides that “[a] court may exercise personal jurisdiction over a person ... as to a cause of action in law or equity arising from the person’s ... transacting any business in this commonwealth.”

 It is noteworthy, however, that one of those five letters was regarding a deal which was unrelated to the instant dispute, three of the other four letters were dated after Graff terminated the contract, and the fifth letter was the termination letter, dated December 28, 1995.

TXM, in its opposition papers, recites a long list of its contacts with Massachusetts and includes, as exhibits, copies of letters and invoices to document its presence in Massachusetts. There is no argument that TXM has a presence in Massachusetts. It is the defendant, Graff, however, over which TXM seeks to have this Court assert jurisdiction; and, therefore, it is Graffs presence or transaction of business in Massachusetts with which this Court is concerned.

TXM’s claims arise from the TXM/Graff Agreement which is limited to TXM providing a ground link for Graffs signal from New York to New Jersey. Even assuming that the TXM/Graff Agreement could not be separated from the ICG Agreement, which TXM brokered and which was acknowledged in the TXM/Graff Agreement, TXM could only show that its breach of contract and breach of the implied covenant of good faith and fair dealing claims arise from the ground link and uplink. In no way was TXM involved in the downlink to the various states, including Massachusetts. See Bueno v. La Compania Peruana de Radiodifusion, 375 A.2d 6 (D.C.Ct.App. 1977) (distinguishing between uplinks and downlinks and holding that, although the downlink, which was the plaintiffs responsibility under the contract, reached the forum state, the court could not assert personal jurisdiction over the defendant whose only contacts with the forum state were the events giving rise to the instant dispute and whose sole responsibility under the contract was the uplink, which did not involve the forum state).

G.L.c. 223A, §5 provides that ”[w]hen the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just.”

 At the time of the transaction and subsequent breach, TXM’s president and managing partner, Beers, was a resident of Massachusetts. However, although he maintains a home in Massachusetts, Beers is now a resident of New York. Beers’ residency in New York further supports dismissing this case in favor of New York asserting jurisdiction as Beers was the primary person who negotiated the subject contract and who signed the contract. Moreover, Graff alleges, and TXM does not dispute, that three of the four sole shareholders of TXM, including Beers, now work from homes or offices maintained in New York or New Jersey.