Swan, J.
The use of the internet and electronic mail in today’s business world unquestionably beclouds the otherwise sharp boundaries of interstate commerce. But due process still requires “that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice,”’ International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940), and “does not contemplate that a state may make binding a judgment in per-sonam against an individual or corporate defendant with which the state has no contacts, ties, or relations.” Id. at 319. That issue arises in this case in which Rolivia, Inc. (“Rolivia”) commenced an action in the Lawrence District Court against Emporium *146 Nostrum, Inc. (“Emporium”) for breach of contract, alleging nonpayment for goods sold and delivered to Emporium in Florida. Emporium moved to dismiss the complaint under Mass. R. Civ. P., Rule 12(b) (2), for lack of personal jurisdiction. The trial court allowed the motion, and Rolivia has appealed.
In defending against the Rule 12(b)(2) motion to dismiss, Rolivia bore “the burden of establishing sufficient facts on which to predicate jurisdiction over” Emporium. Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 3 (1979). “In resolving the issue, we accept as true only the uncontroverted facts as they appear in the materials which were before the [District] Court judge” (emphasis added). City Sanitation LLC v. Beck, 2010 Mass. App. Div. 92, 93, quoting Heins v. Wilhelm Loh Wetzlar Optical Mach. GmbH & Co. KG., 26 Mass. App. Ct. 14, 16 (1988).
According to the uncontroverted facts, as summarized by the motion judge and supplemented by the pleadings, the presidents of both Rolivia, a Massachusetts corporation with a usual place of business in Lawrence, and Emporium, a Florida corporation based in Coral Gables, met at a wine convention in Miami Beach, Florida, in September, 2011. Both companies are wine importers. At the fair, the two presidents orally discussed the purchase by Emporium of wine produced by Rolivia’s clients in Italy. E-mails and telephone calls followed regarding the cost, delivery, and eventual implementation of the shipping of the wine from Rolivia’s place of business in Massachusetts, via a New Jersey transport company used by Rolivia. The e-mails reproduced in Rolivia’s affidavit in opposition to Emporium’s motion to dismiss were eleven in number: two on October 24,2011, between 9:20 AM and 11:48 AM, regarding three wine brands and transport rates; four on October 26, 2011, between 9:20 AM and 1:28 PM, regarding the order of eleven brands in 108 cases and the cost of shipping; one on October 27, 2011 at 6:02 PM, regarding the shipment by a New Jersey company; and four on October 28, 2011, between 11:30 AM and 12:28 PM, regarding the details and payment for shipping costs. A quantity of wine was shipped. An invoice dated October 26, 2011 listed all but two of the brands, totaling 100 cases, described in one of the e-mails of the same date. According to a document entitled “SHIPPING RECEIPT (Not An Invoice),” dated November 21, 2011, another shipment of sixty-two cases of eight brands was sent to Emporium. The record does not indicate whether either of these documents accompanied either of the two shipments of wine. Each document contained the following passage:
This sale was made in Massachusetts and the laws of the Commonwealth of Massachusetts shall control. Buyer acknowledges that this invoice constitutes a binding contract and that the payment is due and payable as indicated on this invoice. In allowing buyer to take custody of the wine, Rolivia, Inc. has fully performed on the contract. Buyer’s performance is not complete until full payment is received by the seller. Until both parties have fully performed, title to the wine remains with Rolivia, Inc. who may reclaim and repossess the wine at any time. If the wine is [in] the custody and control of the buyer, buyer agrees to insure wine and fully indemnify and hold harmless Rolivia, Inc. from any loss related to such wine. If legal action is required to collect payment or to repossess wine sold hereby, buyer agrees to pay all attorneys fees and associated costs.
*147 Rolivia produced no writing or other evidence indicating that Emporium agreed to these terms, which in any event did not contain a forum selection clause. Asserting that much of the wine was spoiled or did not conform to the invoice descriptions, Emporium did not pay for any of it, resulting in this suit for breach of contract. The affidavits and pleadings before the motion judge indicated that Emporium has no business address, neither owns nor rents property, pays no taxes, does not advertise, and maintains no accounts in Massachusetts. Nor has Emporium ever done business with anyone else in this Commonwealth.
“Generally, a claim of personal jurisdiction over a nonresident defendant presents a two-fold inquiry: (1) is the assertion of jurisdiction authorized by statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution? Jurisdiction is permissible only when both questions draw affirmative responses.” Good Hope Indus., Inc., supra at 5-6. The Massachusetts long-arm statute states in relevant part, “A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person’s (a) transacting any business in this commonwealth.” G.L.c. 223A, §3(a). Massachusetts decisions applying the statute, and specifically the phrase “transacting business,” coupled with the due process limitations oí International Shoe Co., supra, are invariably fact specific.
A leading case in which a nonresident was found to be doing business in Massachusetts is Tatro v. Manor Care, Inc., 416 Mass. 763 (1994), a tort action brought in the Commonwealth for personal injuries sustained by the plaintiff while attending a business conference at the defendant’s hotel in California. Although the defendant had no place of business or any agents in Massachusetts and did not advertise in Massachusetts, it had direct billing arrangements with at least ten Massachusetts businesses that utilized the hotel for conventions or meetings, and were billed in Massachusetts for payments for their employees’ and representatives’ use of the hotel’s facilities and amenities. The hotel also had solicited business from a number of national organizations in addition to the organization whose conference the plaintiff attended. Id. at 766-767. The Supreme Judicial Court stated:
Although an isolated (and minor) transaction with a Massachusetts resident may be insufficient, generally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement. It is obvious that the defendant, which solicited and obtained meeting and convention business from at least ten Massachusetts businesses, and maintained telephone and mail contact with them, transacted business in the Commonwealth during the relevant period (citations omitted).
Id. at 767-768. Long-arm jurisdiction over a nonresident was also found in Good Hope Indus., Inc., supra, which involved a contract by which the plaintiff, a Massachusetts corporation, engaged the services of the defendant, a Texas engineering company, to appraise the value of natural gas in leasehold interests the plaintiff owned in Texas. While the initial meeting of the principals occurred in Texas, the defendant sent at least nine appraisal reports in the following year to the plaintiff in Springfield. *148 The substance of the reports was discussed in meetings between the parties in Texas, but the defendant made at least fifty-two telephone calls to the plaintiffs office personnel in Springfield, and sent monthly invoices, seventeen in number, for its services to the plaintiffs Springfield offices, which were paid from the plaintiffs Massachusetts checking account. When the defendant later revised its valuation downward, the plaintiff brought suit for damages due to lost investments and withdrawn loan commitments based on the earlier appraisals. Holding that the defendant was doing business in Massachusetts with minimum contacts consistent with due process, the Supreme Judicial Court stated:
We think that by sending appraisal reports and by initiating numerous telephone calls to the plaintiffs at their headquarters in Massachusetts, the defendant undertook purposeful activity in the forum. It reasonably could have foreseen that significant managerial decisions, based on the information it had provided, would be made in Massachusetts. Had the defendant not desired to expose itself to a claim of Massachusetts jurisdiction, it was within its power to refuse to deal with the plaintiffs here.
Id. at 11-12.
These cases are significantly distinguishable from those where no jurisdiction was found. “Automatic” Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441 (1972) involved a New York defendant that signed a purchase order for a machine and mailed it from New York to the plaintiff in Worcester, Massachusetts. The order was followed by the receipt by the defendant of the plaintiff’s invoice mailed from Massachusetts, a letter from the plaintiff acknowledging and accepting the defendant’s purchase order, and the defendant’s mailing of partial payment to the plaintiff. Noting that “[tjhese were the only contacts the defendant had with Massachusetts” and that they “were in the nature of affirming a contract and making payments through the mail,” id. at 444-445, the Court concluded that “there were insufficient contacts here to make the defendant subject to our long arm statute. The impact upon commerce in Massachusetts was slight and, ... the present defendant did not ‘purposefully ... [avail] itself of the privilege of conducting activities within the forum State.’” Id. at 446, quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958). In Droukas v. Divers Training Academy, Inc., 375 Mass. 149 (1978), the plaintiff, a Massachusetts resident, responded to an advertisement for the sale of two marine engines placed by the defendant, a Florida corporation, in a nautical publication distributed in Massachusetts. The plaintiff telephoned the defendant’s president, and ordered the engines. Some mailings occurred thereafter, including the sending of a check to the defendant, a letter from the defendant confirming the sale, and a number of followup letters from the defendant. The engines were shipped from Florida to Massachusetts and were found to be damaged. The plaintiff sued in Massachusetts. The Court found that the defendant was not transacting business in Massachusetts.
[I]t appears that the defendant’s only contacts with Massachusetts were the placement of an advertisement in a publication distributed in the Commonwealth, the receipt in Florida of a telephone call from the plaintiff *149 in Massachusetts in regard to the purchase of two engines, the sending of correspondence to the plaintiff confirming the sale, and the shipment of the engines ‘collect’ to the plaintiff in Massachusetts. It is undisputed that the defendant’s principal place of business is in Florida. It maintains no office in Massachusetts, nor does it own any property within the Commonwealth. It appears that neither the defendant, its corporate president, nor any of its agents has previously done business within the Commonwealth or had any contact here other than that detailed above. On these facts, and in light of the constitutional limitations previously discussed, we think the defendant’s contacts with Massachusetts were insufficient to constitute the transaction of business in the Commonwealth so as to come within the reach of [G.L.c. 223A,] §3(a).
Id. at 153. The purchase of not just two marine engines, but of two actual boats, in two separate transactions, was the subject of Intech, Inc. v. Triple “C” Marine Salvage, Inc., 444 Mass. 122 (2005). In a suit for breach of contract for nonconforming goods arising out of the second of the two transactions, the plaintiff purchaser and defendant seller were Massachusetts and Louisiana corporations, respectively. Reversing the denial of a Rule 12 (b) (2) motion, the Supreme Judicial Court held that the two boat “sales were two isolated transactions having ‘slight effect on the commerce of the Commonwealth and ... void of any purposeful intent on the part of the defendant to avail itself of the privilege of conducting activities within the forum State.’” Id. at 127, quoting Droukas, supra at 154. Navigating forward in juridical history brings us to Roberts v. Legendary Marine Sales, 447 Mass. 860 (2006), another nonconforming boat purchase, this one by two Massachusetts residents from a Florida corporation. The evidence showed “[sjeveral telephone and e-mail communications between,” id. at 861, the parties prior to reaching an agreement for the sale of the boat, after which the defendant mailed a purchase agreement to one of the plaintiffs, who signed it and sent it back, followed by payment, and ultimate delivery of the boat by a contractor recommended by the defendant but hired by the plaintiffs. Id. at 861-862. It was also noted:
The defendant has never maintained offices, nor has been represented by any agents or employees, in Massachusetts. The sale to the plaintiffs is the only sale the defendant ever made to a Massachusetts resident. The defendant does not advertise in any media specifically aimed at Massachusetts. The defendant advertises boats for sale in Boat Trader, an advertising booklet distributed in the North Florida area, and also advertises on Boat Trader’s Web site.
Id. at 861. “Our decisions oí Droukas, [supra], and Intech, Inc., supra, govern,” the Court stated simply. Id. at 863. “As in those cases, the transaction here ‘was an isolated one lacking a justifiable ground on which to assert jurisdiction.’” Roberts, supra at 863, quoting Intech, Inc., supra at 126.
Allowing for minor factual dissimilarities, the evidence in the matter before us more resembles that of “Automatic” Sprinkler Corp. of Am., Droukas, Intech, Inc., and Roberts than Tatro and Good Hope Indus., Inc. Emporium, first of all, like the *150 defendants in the former cases, has conducted no other business in Massachusetts, and has no presence or assets here. Indeed, the description of the defendant in Droukas also describes Emporium: the “defendant’s principal place of business is in Florida, ... [it] maintains no office in Massachusetts,” owns no “property within the Commonwealth,” and has not “previously done business within the Commonwealth or had any contact here.” Droukas, supra at 153. Roberts is also similar: no offices or employees in Massachusetts, and the sale to the plaintiff being “the only sale the defendant ever made to a Massachusetts resident.” Id. at 861. The only face-to-face meeting of the principals of the parties to discuss the wine purchase occurred in Florida. Whether the wine buying consisted of one purchase in two shipments or of two purchases, both close in time, appears to be inconsequential. They were isolated transactions in either event, as Droukas and Intech, Inc. teach. The choice of law language in an invoice and receipt do little to help. There is no evidence that Emporium agreed to those terms or that they even accompanied the shipped goods. In any event, Massachusetts law in these circumstances would most likely bring to bear the same principles as Florida law.[1] Notably absent in these sentences is a forum selection clause or any agreement to submit to the jurisdiction of the courts of the Commonwealth.[2]
Rolivia relies on Rock and Roll Library, Inc. v. Quantum Am., Inc., No. 12-P-180 (Mass. App. Ct. October 24,2012) (unpublished Rule 1:28 decision),[3] a copy of which was provided to the panel just prior to oral argument, as supportive of its position. In that case, however, the Appeals Court, upholding jurisdiction over the defendant, placed emphasis on the fact that the “defendants solicited business in Massachusetts specifically, sent a representative to Massachusetts to negotiate with the plaintiff, and engaged in extensive communications with the Massachusetts plaintiff both before and after signing the design contract.” Id. None of that occurred here. Emporium solicited no business in Massachusetts, and none of its representatives set foot in the state. The eleven e-mails over four days together with some other communications can scarcely be characterized as “extensive”; they are more properly described as the “[s]everal telephone and e-mail communications,” found “lacking a justifiable ground on which to assert jurisdiction” in Roberts, supra at 861, 863, quoting Intech, Inc., supra at 126.
Rolivia argues that the motion judge should have held an evidentiary hearing prior to ruling on Emporium’s Rule 12(b) (2) motion. A judge, however,
*151 in his discretion, may ‘hear and determine’ a rule 12 (b) (2) motion before trial. The judge hearing the motion must consider all relevant evidence proffered by the parties and make all factual findings necessary for the determination of jurisdictional facts. The judge must then determine whether the plaintiff has met its burden of proof by a preponderance of the evidence. It is not necessary, however, to conduct an evidentiary hearing simply because facts proffered by the plaintiff are disputed by the defendant (emphasis added).
Cepeda v. Kass, 62 Mass. App. Ct. 732, 739-740 (2004). As noted, no evidentiary hearing is required if the motion can be heard on “uncontroverted facts.” City Sanitation LLC, supra at 93. The facts as recited above are uncontroverted. The principal disputed facts involve the parties’ respective views of the nature of Rolivia’s business. Emporium avers that Rolivia was the agent of a single winery in Italy, but that it shipped the wine to Emporium from its own surplus in Massachusetts. Rolivia states that it imports from several wineries and sells its wines from its warehouse in Massachusetts. The perceived distinction lacks any substantive difference. Either way, the wine was sold by Rolivia from Massachusetts, but that alone, together with other uncontroverted facts, does not give rise to personal jurisdiction.
As related at the outset of this opinion, internet sales have radically changed the manner of doing business, nationally and internationally, even since the most recent decisions on the issues presented here. See, e.g., Ajemian v. Yahoo!, Inc., 83 Mass. App. Ct. 565 (2013). Underlying Rolivia’s argument is the suggestion that the due process required by International Shoe Co. and its progeny should now be met by a more liberal view of “minimum contacts.” The United States Supreme Court recognized this trend a half century ago:
Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.
McGee v. International Life Ins. Co., 355 U.S. 220, 222-223 (1957). See also Haynes, The Short Arm of the Law: Simplifying Personal Jurisdiction Over Virtually Present Defendants, 64 U. Miami L. Rev. 133 (2009) (discussing arguments for and against limiting long-arm jurisdiction where nonresidents do not regularly do business in the forum state and expanding jurisdiction where businesses conduct internet website activity targeted at the forum state).
Certainly the limitation on the assertion of personal jurisdiction on nonresidents has its anomalies. Thus, if the facts of this case were slightly altered, by Emporium *152 paying for the wine and then suing Rolivia in Florida for breach of contract because of spoilage, the parties’ roles would be reversed from those taken here — Emporium seeking jurisdiction, and Rolivia opposing it. Our current jurisprudence nevertheless does not permit resolution of this matter other than to decline jurisdiction.[4]
Judgment affirmed.
So ordered.

 Both states have adopted Article 2 (Sales) of the Uniform Commercial Code. G.L.c. 106, §2-101 et seq.; Fla. Stat. ch. 672.

 In the case of online contracts, for instance, forum selection clauses contained in such contracts have been enforced by the courts only where the record established that the terms of the agreement were displayed, at least in part, on the user’s computer screen, and the user was required to signify his or her assent by clicking “I accept.” Ajemian v. Yahoo!, Inc., 83 Mass. App. Ct. 565 (2013).

 “A summary decision pursuant to rule 1:28, issued after [February 25, 2008], may be cited for its persuasive value but ... not as binding precedent.” Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

 Perhaps the use of forum non conveniens may make for a more equitable solution in some circumstances. See G.L.c. 223A, §5 (“When the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just”). In this case, even if jurisdiction in Massachusetts had been found and Rolivia had obtained a judgment against Emporium, it still might have to seek enforcement in Florida: a stay or dismissal under G.L.c. 223A, §5, to allow for a contract suit, and, if successful, a collection action, all to proceed in Emporium’s home state might be a preferred approach. However, although Emporium raised this option in the court below, “we do not reach the merits of a motion to dismiss on the basis of forum non conveniens ... as that question is not properly before us.” Good Hope Indus., Inc., supra at 13.